UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF
KENTUCKY AT LOUISVILLE

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                                               CRIMINAL ACTION NO. 3:10-CR-35-CRS

RODRIGO MARCIAS-FARIAS                                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of the motion of defendant, Rodrigo Marcias-Farias, for compassionate release (DN 496). He alternatively requests release to home confinement. Marcias-Farias is incarcerated at the Federal Correctional Center ("FCI") Manchester in Manchester, Kentucky where he is serving a 240-month prison sentence. To date, he has served less than half of his sentence. FCI Manchester presently reports no positive cases of COVID-19 among the inmates in the institution.[1] Thus, Marcias-Farias currently seeks relief urging fear of developing a life-threatening illness from COVID-19 infection, when he presently faces no such risk in the facility in which he is housed. This fact alone warrants denial of the defendant's motion. However, we address the merits of his arguments herein and conclude that Marcias-Farias has not established an extraordinary and compelling reason for reduction of his sentence.

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[2] The President of the United States declared a national emergency

---

[1] *See* BOP.gov/coronavirus/- the BOP's COVID-19 Resource Page, Inmate Test Information by facility.
[2] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on

on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[3] As of the date of this writing, there are 55,064,128 confirmed cases worldwide and 1,328,015 deaths; in the United States, there are 11,085,184 confirmed cases and 245,164 deaths.[4] Further elaboration concerning the health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons, is unnecessary. Suffice it to say that the Court addresses motions for compassionate release, and Marcias-Farias' motion in particular here, with the gravity of the situation in mind.

Marcias-Farias was convicted of possession with the intent to distribute and conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana and was sentenced to a term of imprisonment of 320 months in October 2011. He was resentenced to 240 months in April of 2015. There were seven defendants charged in the case. Marcias-Farias received a four-level adjustment for his role as the organizer or leader of the conspiracy along with co-defendant Lara-Gascon. This was not Marcias-Farias' first drug conspiracy conviction. He had a prior federal conviction in 2000 involving 675 grams of cocaine. He pled guilty to the charges. The conduct was described as the sale of cocaine with others from a local hotel. DN 313, p. 14.

Marcias-Farias filed the present motion for compassionate release after first making a request with the Bureau of Prisons ("BOP"). *See* DN 496-1 (June 30, 2020 *pro se* letter to

---

COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s-opening-remarks-at- the-media-briefing-on-covid-19--11-march-2020).

[3] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[4] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited May 10, 2020).

Warden). Marcias-Farias filed his revised motion for compassionate release (DN 496)[5] with the Court on September 21, 2020 after no response was received from the Warden.

Initially we note that despite the defendant's request for an order of release to home confinement, the home-confinement statutes, 18 U.S.C. § 3624(c) and 34 U.S.C. § 60541(g), do not contain any provision for judicial review. Thus, his motion as it pertains to home confinement must be dismissed for lack of jurisdiction. *See United States v. Garza*, No. 18-CR-1745-BAS, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020) (recognizing, in case in which inmate invoked COVID-19 as reason for home confinement, that "the Court lacks authority to designate home confinement"); *see also United States v. Carter*, No. 1:18-cr-86-JMS, 2020 WL 1808288, at *2 (S.D. Ind. Apr. 9, 2020) (citing *Garza* in denying inmate's request to serve his sentence on home confinement because inmate had "not established that the Court has the power to grant him the relief he seeks"); *United States v. Brown*, No. RDB-16-cr-00553, 2020 WL 1479129, at *1 (D. Md. Mar. 26, 2020) (denying a motion for home confinement filed by a prisoner citing concerns over COVID-19 because "[i]t is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement, pursuant to 18 U.S.C. § 3624(c)").

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of

---

[5] The defendant filed a motion for compassionate release and a revised motion for compassionate release on the same day. He requested that the revised motion (DN 496) be substituted for the motion (DN 495). The court accordingly denied DN 495 as moot by Order entered October 27, 2020. DN 499.

Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"

Marcias-Farias has satisfied the exhaustion requirement of the First Step Act. He properly sought relief from the BOP and, having received no response in 30 days, filed his motion with the Court. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison.").

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3,[6] the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

---

[6] "While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g., United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019);*United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider."
*United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019).

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Marcias-Farias is 44 years old. He claims to suffer from a "history of respiratory ailments and obesity, as well as undiagnosed mixed hyperlipidity" which he contends "are co-morbidities." DN 496, p. 3. He contends that his physical condition renders him a high risk inmate; that is, that he is more susceptible to a serious illness if he were to contract the COVID-19 virus. This is the sole ground for his assertion of "extraordinary and compelling"

5

circumstances warranting relief.

With respect to Macias-Farias' concern that he is more susceptible to adverse outcomes if infected, we find that the case has been somewhat overstated. He states that "Certain categories of individuals are at a higher risk of severe illness, including older adults, and people of any age who have serious underlying medical conditions, which include asthma and any disease leading to a compromised immune system." DN 496, p. 24. . Taking this statement as true,[7] it is of little help to Marcias-Farias as he does not point to evidence that indicates the he has moderate to severe asthma or that he has a disease leading to a compromised immune system.

First, we note that we have been provided no medical records more recent than 2017. As we have no documentary evidence concerning Marcias-Farias' current state of health, we have nothing upon which to find an extraordinary and compelling reason for compassionate release at this time.

We have reviewed the records offered by the defendant, paying particular attention to those documents he references in his motion. One such document is the baseline study done in 2016 to evaluate the defendant's history of asthma. The study found no acute cardiopulmonary disease, lungs clear and heart normal size. DN 496-3, p. 86. Marcias-Farias notes that he was provided an inhaler and was prescribed "a number of corticosteroids over his imprisonment" which he urges weakens the immune system. DN 496, p. 26. The records reveal, however, that he was directed not to use his albuterol inhaler daily for asthma; only as needed. Similarly, fluticasone spray for allergies was prescribed for as-needed use only. He was prescribed a

---

[7] The Court can take judicial notice of the CDC's published list of underlying medical conditions which place individuals at an increased risk of severe illness from COVID-19 which does not include asthma. Moderate to severe asthma is identified by the CDC as a condition which *might pose an increased risk* for severe illness from COVID-19. Those individuals with asthma are advised, among other things, to take follow their asthma action plan, avoid asthma triggers and know how to use and continue to use their inhaler.

mometasone furoate inhaler in 2017 also for allergies, one puff in the evening. DN 496-3, p. 102. The single course of methylprednisone that Marcias-Farias received was apparently prescribed in 2014.

The records indicate that the defendant's asthma and allergies were addressed and controlled. As already noted, the Court has no information indicating his current condition, but we feel confident that more recent records would have been provided among the over 200 pages submitted by the defendant had his condition significantly deteriorated since 2017. The as-needed use of an albuterol inhaler and select records referenced by the defendant pinpointing a number of insufficiently-described, non-emergent incidents of "allergic reactions" fail to establish that Marcias-Farias suffers from either moderate to severe asthma or a disease leading to a compromised immune system. *See United States v. Murphy*, No. 15-204 2020 WL 2507619 (E.D.Mich. May 15, 2020)(Elkton inmate; asthma controlled by inhaler use); *United States v. Abram*, 2020 WL 3097259 (E.D.Mich. June 11, 2020)(Elkton inmate; asthma not moderate or severe, but rather, is well controlled with inhaler).

Additionally, Marcias-Farias contends that he suffers from undiagnosed hyperlipidity and obesity. However, there is nothing in the medical records addressing either of these self-reported conditions. As there is no medical indication of these conditions, the Court must conclude that his concern that he is at increased risk is not borne out by the record in this regard, and his motion for compassionate release on this basis must be denied. *See, ie., United States v. Heromin,* No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, *2 (M.D.Fla. June 7, 2019)("Without his medical provider corroborating either of these requirements, Heromin has not shown a foundation for compassionate release based on his medical condition."); *United States v. Lake*, No. 5:16-076-DCR, 2019 WL 4143293 (E.D.Ky. Aug. 30, 2019)(defendant's chronic conditions

do not limit ability to provide self-care in the correctional facility); *United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)(compassionate release denied: "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."); *United States v. Turhani*, 2020 WL 2847182 (N.D.Ohio June 2, 2020)(Petitioner without CDC risk factors denied compassionate release despite COVID-19 outbreak in prison, holding that the existence of a pandemic does not authorize the court to usurp the BOP's authority and empty prisons.).

Again, we reiterate that there are no cases of COVID-19 among the prison population at FCI Manchester as of the date of this writing. Further, with continuing vigilance, the BOP has issued revised policies to combat the spread of the virus in its facilities. See https://www.bop.gov/. By contrast, Kentucky reported 3,649 new cases of COVID-19 today (see https://www.kycovid19.gov), and an alarming positivity rate of 9.13%, the highest since the pandemic began. (see https://www.chfs.ky.gov). Accordingly, Marcias-Farias' concern about being at a higher risk of contracting COVID-19 in FCI Manchester as compared to being released is simply not borne out by the statistics at this time.

Even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Marcias-Farias' crimes weigh against release from custody. The Court agrees.

Marcias-Farias has two federal convictions for conspiracy with numerous others to traffic in large quantities of controlled substances, thus the Court must consider the likelihood that this

8

defendant would reoffend.

Further, the sentencing factors were thoroughly and carefully considered in imposing sentence in this case. The nature and circumstances of the offense, the weight of the evidence, Marcias-Farias' history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by his release were taken into account in reaching the imposition of a 240-month prison sentence less than half of which has been served. The Court finds no ground to justify any reduction in Marcias-Farias' sentence, and that a reduction would fail to respect the seriousness of his crimes.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Rodrigo Marcias-Farias, for compassionate release (DN 496) is **DENIED.**

**IT IS SO ORDERED.**

November 20, 2020

Charles R. Simpson III, Senior Judge
United States District Court

cc: Counsel of Record
Rodrigo Marcias-Farias, *pro se*
Reg. No. 07330-033
FCI Manchester
P.O.Box 4000
Manchester, KY  40962